UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL KUZMA,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                                    12-CV-807S

UNITED STATES DEPARTMENT OF JUSTICE,

                              Defendant.


## I. INTRODUCTION

        In this action, Plaintiff Michael Kuzma, a local attorney, challenges Defendant United

States Department of Justice's response to his request for records pertaining to the

Occupy Buffalo Movement,[1] which he submitted under the Freedom of Information Act, 5

U.S.C. § 552 ("FOIA").

        Presently before this Court are the parties' competing Motions for Summary

Judgment, brought under Rule 56 of the Federal Rules of Civil Procedure.  (Docket Nos.

16, 23.)  For the following reasons, Defendant's motion is granted and Plaintiff's motion is

denied.

---

[1]The Occupy Buffalo Movement was a loose-knit group protesting economic inequality.  It staged its protests in the city center — Niagara Square.  The group was an offshoot of the larger Occupy Wall Street Movement.

## II. BACKGROUND

### A.    Plaintiff's FOIA Request

The facts concerning Plaintiff's FOIA request are not in dispute.[2]

On January 31, 2012, Plaintiff submitted a FOIA request to the Federal Bureau of Investigation seeking copies of all records pertaining to the Occupy Buffalo Movement. (Defendant's Rule 56 Statement of Undisputed Facts ("Defendant's Statement"), Docket No. 17, ¶ 2.)   The FBI responded by letter dated February 6, 2012, wherein it acknowledged receipt of Plaintiff's request and advised that a search for responsive documents in the Central Records System ("CRS") was underway.   (Defendant's Statement, ¶ 3.)

But the FBI failed to respond to Plaintiff's request within the statutorily mandated 20 working days,[3] which prompted Plaintiff to appeal to the Office of Information Policy ("OIP") on April 27, 2012.  (Defendant's Statement, ¶ 4.)  OIP acknowledged receipt of Plaintiff's appeal on May 7, 2012.   (Defendant's Statement, ¶ 5.)

On May 21, 2012, the FBI notified Plaintiff that an analyst was reviewing his request. (Defendant's Statement, ¶ 6.)  Approximately two months later, OIP informed Plaintiff that it had denied his appeal, because the FBI had not yet made an adverse determination that it could review.  (Defendant's Statement, ¶ 7.)  And although it noted that the FBI was processing his request, OIP further advised Plaintiff that the FOIA authorizes a requester

---

[2]The facts are drawn from Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1.  (Docket No. 17.)  Because Plaintiff did not respond to this statement, the facts therein are deemed admitted.  See Local Rule 56(a)(2) (providing that statements of undisputed fact that are not controverted by the non-moving party are deemed admitted).

[3]By statute, government agencies must respond to a FOIA request within 20 days.  See 5 U.S.C. § 552(a)(6)(A)(i).

to file a federal lawsuit when an agency takes longer than the statutory time period to respond to a request.  (Defendant's Statement, ¶ 7.)

Plaintiff subsequently filed suit in this court on August 27, 2012.  (Defendant's Statement, ¶ 8; Docket No. 1.)  Less than one month later, on September 14, 2012, the FBI notified Plaintiff that it had discovered five pages of records responsive to his request but was withholding them in their entirety under certain FOIA exemptions. (Defendant's Statement, ¶ 9.)   The notification was sent by David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, FBI. (Defendant's Statement, Exhibit G.)

On February 19, 2013, Defendant filed the instant Motion for Summary Judgment, along with its <u>Vaughn</u> index.[4]  (Docket Nos. 16, 16-1, 26.)  The <u>Vaughn</u> index (comprised of the Declaration of David M. Hardy ("Hardy Decl.") and the Supplemental Declaration of David M. Hardy ("Supp. Hardy Decl.")) explains Defendant's search for records and withholding of responsive information under the exemptions in 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).[5]  Plaintiff cross moved for summary judgment on April 22, 2013.  (Docket No. 23.)  After full briefing, which concluded on May 29, 2013, this Court took the motions under advisement without oral argument.

---

[4]Arising out of the litigation in <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), a <u>Vaughn</u> index is an affidavit or series of affidavits explaining the agency's treatment of the plaintiff's FOIA request and detailing the agency's claimed exemptions.  <u>See</u> <u>Halpern v. Fed. Bureau of Investigation</u>, 181 F.3d 279, 291 (2d Cir. 1999).

[5]Unless otherwise noted herein, all section cites are to Title 5 of the United States Code.

## III. DISCUSSION

**A.     Legal Standard**

Under the FOIA, "every federal agency is required . . . to make its records 'promptly available to any person' upon receipt of a reasonably articulated request."  <u>Phillips v. Immigration & Customs Enforcement</u>, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) (quoting 5 U.S.C. § 552(a)(3)).  The FOIA embodies Congress's desire that an open government allow for "an informed citizenry' to hold the governors accountable to the governed.'" <u>Grand Cent. P'ship, Inc. v. Cuomo</u>, 166 F.3d 473, 478 (2d Cir. 1999) (internal quotations and citations omitted); <u>Phillips</u>, 385 F. Supp. at 301 ("FOIA reflects a strong Congressional policy of requiring full public disclosure of documents and records maintained by federal agencies.").   To that end, the FOIA requires the fullest possible public disclosure of government-kept records yet at the same time maintains the confidentiality of sensitive information based on narrowly tailored exemptions intended to protect certain interests.

Federal courts are required to conduct *de novo* review of an agency's decision to withhold requested records under the FOIA.  <u>Massey v. FBI</u>, 3 F.3d 620, 622 (2d Cir. 1993).   The preferred method of doing so is by summary judgment.  <u>See</u> <u>Fox News Network, LLC v. U.S. Dep't of the Treasury</u>, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); <u>Jones-Edwards v. Appeal Bd. of NSA</u>, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

A plaintiff is entitled to summary judgment in a FOIA case "when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." New York Times Co. v. U.S. Dep't of Def., 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007).

Conversely, an agency is entitled to summary judgment when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); see also Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009). To carry its burden, the defending agency may rely on a Vaughn index, which consists of "affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption." Lesar v. United States Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980); see also Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999) (citing Lesar). The function of the Vaughn index is three-fold: "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the

applicability of the exemption, and (3) it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court."  Halpern, 181 F.3d at 291 (quoting Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987)).

Agency affidavits, including the Vaughn index, are presumed to have been made in good faith.  See Carney, 19 F.3d at 812.  This presumption is not rebutted by bare allegations or speculative claims that additional documents exist.  See Grand Cent., 166 F.3d at 489.  "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply."  Garcia v. United States Dep't of Justice, Office of Info. & Privacy, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002)(citing Carney, 19 F.3d at 812); Center for Constitutional Rights v. C.I.A., F.3d    , 2014 WL 4290452, at *3 (2d Cir. Sept. 2, 2014) (citing Wilner, 592 F.3d at 73) (agency declarations "are accorded a presumption of good faith," and "when such declarations are 'not controverted by either contrary evidence in the record nor by evidence of agency bad faith,' summary judgment for the government is warranted."); Triestman v. United States Dep't of Justice, DEA, 878 F.Supp. 667, 672 (S.D.N.Y. 1995).

**B.    Analysis**

**1.    Adequacy of Search for Responsive Documents**

In response to a request for records under the FOIA, agencies are required to conduct a search "reasonably designed to identify and locate responsive documents" but need not "take extraordinary measures to find the requested records."  Kennedy v. United States Dep't of Justice, 03-CV-6077, 2004 WL 2284691, at *2 (W.D.N.Y. 2004) (citing

<u>Garcia</u>, 181 F. Supp. 2d at 368).   If an agency sufficiently demonstrates that it has conducted a reasonable search for responsive documents, it has fulfilled its obligations under the FOIA.  <u>See Garcia</u>, 181 F. Supp. 2d at 366 (citing <u>Weisberg v. United States Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).   The agency can meet its burden of showing a good faith search by supplying affidavits from appropriate officials setting forth facts indicating that a thorough search was conducted.  <u>See Rabin v. United States Dep't of State</u>, 980 F. Supp. 116, 120 (E.D.N.Y. 1997).

The <u>Vaughn</u> index in this case was prepared by David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, FBI. (Hardy Decl., ¶¶ 1-5.)  Therein, Hardy states that in response to Plaintiff's FOIA request, the FBI searched its CRS using search terms that included "Occupy Buffalo," "Occupy Buffalo Movement," and "Buffalo Occupy Movement." (Hardy Decl., ¶ 20.) It also reviewed cross-reference material by searching its Request Tracking System ("RTS").  ( Hardy Decl., ¶ 21.)  Hardy explains at length the content, organization, and manner of access of these indices.  (Hardy Decl., ¶¶ 14-19; Supp. Hardy Decl., ¶¶ 5, 6, 8.)  The searches yielded 454 pages of potentially responsive documents, which after agency review, resulted in five responsive pages.  (Hardy Decl., ¶ 22; Supp. Hardy Decl., ¶ 10.)

Plaintiff challenges the sufficiency of Defendant's search for responsive records. He first alleges that the FBI failed to search "subfiles, 1A envelopes, enclosures behind files, Bulky Exhibits, control files, and 'JUNE' files."  <u>See</u> Docket No. 23-2, p. 2.  As indicated in the <u>Vaughn</u> index, however, the FBI searched both its CRS and RTS.  (Hardy Decl., ¶¶ 20–22; Supp. Hardy Decl., ¶¶ 7, 9.)  Because the CRS is searched through the

integrated Automated Case Support System ("ACS"),[6] the search in CRS would have located, if they existed, documents contained in the files Plaintiff identifies, except for "JUNO" files, which have not been used since 1978.  (Hardy Supp. Decl., ¶ 7.)

Plaintiff next maintains that the FBI has not provided sufficient details about the declassification of three of the five responsive documents referenced in the <u>Vaughn</u> index. (Hardy Decl., ¶ 23.)   In particular, Plaintiff complains that the <u>Vaughn</u> index "does not include the type of classification . . ., identity of the classifier, date or event for automatic declassification or classification review or downgrading." (Docket No. 23-2, p. 4.) The FBI, however, is not asserting an exemption under the FOIA based on classified status, and Plaintiff has provided no authority requiring an agency to provide the information he requests in the absence of such an assertion.  (Hardy Decl., ¶ 11.)

Next, Plaintiff suggests that the FBI may be withholding FD-71a complaint forms and FD-302 record-of-interview forms.  (Docket No. 23-2, pp. 3, 4.)  The FBI, however, did not conduct any interviews (Supp. Hardy Decl., ¶ 10 n. 3), and Plaintiff offers nothing but surmise and speculation that FD-71a forms may exist.  <u>See</u> <u>Grand Cent.</u>, 166 F.3d at 489 (noting that the presumption of good faith enjoyed by agency affidavits is not overcome by bare allegations or speculative claims that additional documents exist).

Finally, Plaintiff asserts that the FBI failed to conduct a "text search" of the ECF index.  (Docket No. 23-2, p. 5.)  But the <u>Vaughn</u> index makes clear that the FBI performed such a search, and in fact, it was this search that yielded the five responsive documents. (Hardy Decl., ¶ 21; Supp. Hardy Decl., ¶ 10.)

---

[6]The ACS is comprised of three integrated electronic applications: (1) Investigative Case Management ("ICM"); Universal Index ("UNI"); and Electronic Case File ("ECF").  (Supp. Hardy Decl., ¶ 7.)

Consequently, finding no merit in Plaintiff's contentions otherwise, this Court finds that Defendant conducted a reasonable search for responsive documents, thereby fulfilling its search obligations under the FOIA.  See Garcia, 181 F.Supp.2d at 366.

### 2.    Defendant's Claimed Exemptions

Exemptions in the FOIA are to be "narrowly construed since 'disclosure, not secrecy, is the dominant objective of the Act.'"  Kennedy, 2004 WL 2284691, at *2 (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). Nonetheless, when responsive records fall within any of the applicable exemptions, disclosure is not required.  See FLRA v. United States Dep't of Veterans Affairs, 958 F.2d 503, 508 (2d Cir. 1992).

In this case, Defendant withheld records pursuant to the following FOIA exemptions:

- Exemption 6:            Exempting "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[7]

- Exemption 7(C):        Exempting "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."[8]

- Exemption 7 (D):       Exempting "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or

---

[7] § 552(b)(6).

[8] § 552(b)(7)(C).

information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source."[9]

-     <u>Exemptions 7 (E)</u>:     Exempting "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.[10]

(Hardy Decl., ¶ 24.)

      As stated above, there are five pages responsive to Plaintiff's FOIA request. The five pages consist of two separate reports from "Guardian," the FBI's data system devoted to supporting the FBI's role in defending terrorism threats. (Hardy Decl., ¶ 23.) The first report consists of two pages (Kuzma-1 and Kuzma-2) and is dated November 2011. (Hardy Decl., ¶ 23.) The second report consists of three pages (Kuzma-3 through Kuzma-5) and is dated January 2012. (Hardy Decl., ¶ 23.) The second report contains the same information as the first report, with the addition of follow-up information, such as law enforcement checks, research, and current disposition. (Hardy Decl., ¶ 23.)

      The FBI withheld all five pages in their entirety pursuant to the exemptions identified above. (Hardy Decl., Exhibit H; Supp. Hardy Decl., ¶ 5.) Plaintiff challenges both the complete withholding of the five pages and the applicability of the claimed exemptions.

---

[9] § 552(b)(7)(D).

[10] §§ 552(b)(7)(E).

### a.   Segregability

The FOIA requires government agencies to disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Non-exempt portions of a record may be withheld only if they are "inextricably intertwined" with the exempt portions.  See Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys., 463 F.3d 239, 249 n. 10 (2d Cir. 2006).  If an agency determines that non-exempt portions of a record are not segregable, it must justify that determination in detail.  See Mead Data Cent. , Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).  In this regard, an agency is entitled to a presumption that it complied with the FOIA's segregability requirements.  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).  A district court "must make specific findings of segregability regarding the documents to be withheld" before ruling that an asserted FOIA exemption is applicable. Id. at 1116.

Here, Defendant withheld all five responsive documents in their entirety, because the exempt and non-exempt portions of the records are inextricably intertwined.  Hardy explains in the Vaughn Index that "the FBI made every effort to provide plaintiff with all material in the public domain and with all reasonably segregable portions of material." (Supp. Hardy Decl., ¶ 12.) But the FBI ultimately determined that no disclosure is possible because the non-exempt portions are "so intertwined with protected material that segregation is not possible without revealing the underlying protected material."  (Supp. Hardy Decl., ¶ 12.)

Plaintiff's only response to the FBI's segregability determination is that "selective redactions should have been made to the responsive pages . . . [t]he FBI, however, elected

not to do so." (Docket No. 23-2, p. 6.)  This type of non-evidentiary, bald allegation is insufficient to rebut the presumption of regularity that the FBI complied with the FOIA's segregability requirements, especially since Plaintiff's contention that the FBI "elected not to do so" is specifically rebutted by Hardy's representation that "the FBI made every effort" to segregate portions of the records.  Sussman, 494 F.3d at 1117.

Nor is it cause for *in camera* review.  Although, the FOIA specifically provides for *in camera* review by the district court if necessary, see 5 U.S.C. § 552(a)(4)(B), the Second Circuit has adopted a restrained approach.  "When a government agent can attest in a sworn affidavit that the redactions are necessary, and elaborate on the reasons for the redactions with sufficient specificity, the district court should be able to rule on the appropriateness of the redactions without conducting an *in camera* review of the redacted materials."  Halpern, 181 F.3d at 287.  But *in camera* review may be appropriate "where the record show[s] the reasons for withholding [are] vague or where the claims to withhold [are] too sweeping or suggestive of bad faith, or where it might be possible that the agency ha[s] exempted whole documents simply because there [is] some exempt material in them."  Halpern, 181 F.3d at 292.  This, however, is the exception, not the rule, and is not the case here.  See Local 3, Int'l Bhd. of Elec. Workers, 845 F.2d 1177, 1180 (2d Cir. 1988) ("*In camera* review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion."); Kennedy, 2004 WL 2284691, at *4.

Consequently, this Court finds that Plaintiff has failed to rebut the presumption that Defendant has complied with its segregability and non-exempt disclosure requirements under the FOIA and has failed to show cause for *in camera* review.

### b.    Exemptions 6 and 7(C)

Exemption 6 permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  See 5 U.S.C. § 552 (b)(6).  It is intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 599, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982).

A two-prong analysis is used to determine whether an agency's Exemption 6 withholdings are proper.  First, the court must determine whether the records in question are "personnel," "medical," or "similar" files.  Cook v. Nat'l Archives & Records Admin., 758 F.3d 168, 174 (2d Cir. 2014).  "Similar files" is a broad category that includes "detailed Government records on an individual which can be identified as applying to that individual." Washington Post, 456 U.S. at 602.

In keeping with the purpose of the FOIA, it is the personal nature of the information contained in a record that controls, not the label on the file in which it is contained.  See Washington Post, 456 U.S. at 601 ("The protection of an individual's right of privacy which Congress sought to achieve by preventing the disclosure of information which might harm the individual surely was not intended to turn upon the label of the file which contains the damaging information." (internal alterations and citations omitted)).  Here, this Court finds that the Guardian investigative records qualify as "similar files" given the personal nature of the information contained therein.

Second, if the record is a personnel or medical or similar file, the court must "balance the public need for the information against the individual's privacy interest in order

to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." Cook, 758 F.3d at 174 (quoting Associated Press v. U.S. Dep't of Def., 554 F.3d 274, 291 (2d Cir. 2009).  In this regard, the court must determine "whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." Long v. Office of Pers. Mgmt., 692 F.3d 185, 191 (2d Cir. 2012) (quoting Multi Ag Medial LLC v. Dep't of Agric., 515 F.3d 1224, 1229 (D.C. Cir. 2008)).  On the other hand, the court must also consider "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government." U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)).

Exemption 7(C) exempts from disclosure any records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy.  See 5 U.S.C. § 552(b)(7)(C).  It is properly invoked when the invasion of personal privacy outweighs the public's interest in disclosure.  See Nat'l. Archives and Records Admin. v. Favish, 542 U.S. 157, 171-72, 124 S.Ct. 1570, 1580-81, 158 L.Ed.2d 319 (2004).  This exemption is more expansive than Exemption 6, because it "applies to any disclosure that could reasonably be expected to constitute an invasion of privacy that is unwarranted." Associated Press v. Dep't of Justice, No. 06 Civ. 1758, 2007 WL 737476, at *4 (S.D.N.Y. Mar. 7, 2007).  Because Exemptions 6 and 7(C) both balance

individuals' privacy interests under similar standards, they are often analyzed together.[11]

See, e.g., Conti v. U.S. Dep't of Homeland Sec., No. 12 Civ. 5827(AT), 2014 WL 1274517, at *17 (S.D.N.Y. Mar. 24, 2014) (analyzing Exemptions 6 and 7(C) together).

The FBI has invoked Exemptions 6 and 7(C) to protect the names or identifying information of (1) FBI Special Agents and support personnel responsible for investigating the activities reported in the records, (2) state and local law enforcement personnel, (3) third parties merely mentioned, and (4) a third party who provided information to the FBI. (Hardy Decl., ¶¶ 33-39.)

The FBI asserts that these individuals have strong privacy interests in keeping their identities and personal information confidential, interests that include personal safety, witness safety, protection of reputation, protection of sources, and avoidance of unwarranted suspicion. (Hardy Decl., ¶¶ 33-39.) In contrast, the FBI maintains that the public's need for the information is minimal, if any, as the information sheds no light on the operations or activities of the FBI. (Hardy Decl., ¶¶ 36, 39.)

Plaintiff's objection to the FBI's Exemptions 6 and 7(C) withholdings consists solely of its contention that "[p]rivacy interests do not outweigh the public interest in shedding light on FBI surveillance of Occupy Buffalo, a peaceful political movement." (Docket No. 23-2, p. 9. Plaintiff makes no effort, however, to explain how or why the disclosure of individuals' personal information would shed any light on the FBI's surveillance of Occupy Buffalo.

---

[11]As a threshold matter for Exemptions 7(C), (D), and (E), the Government must establish that the information being withheld was "compiled for law enforcement purposes" within the meaning of the statute. See Halpern, 181 F.3d at 296. In this regard, the rule in this circuit is that the Government need only show that the records were compiled by a law enforcement agency in the course of a criminal investigation. See Ferguson v. FBI, 957 F.2d 1059, 1070 (2d Cir. 1992); Williams v. FBI, 730 F.2d 882, 883-84 (2d Cir. 1984). The legitimacy of the investigation is immaterial: "[A]ll records of investigations complied by the FBI are for law enforcement purposes." Halpern, 181 F.3d at 296. There is no dispute that the documents at issue in this case were compiled for law enforcement purposes.

Indeed, the FBI did not even have an investigative file concerning the Occupy Buffalo Movement; its role was limited to assisting local law enforcement with their investigative efforts.  (Hardy Decl., ¶ 22.)

To the extent Plaintiff's submission can be read to suggest that the FBI acted improperly by assisting local law enforcement, Plaintiff must come forth with more than just that bare allegation.  See Favish, 541 U.S. at 174 (where "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure").  Plaintiff has presented no evidence of impropriety or illegality by the FBI.

The Second Circuit has found it appropriate to redact information that, if released, would have disclosed "the identifies of FBI agents, cooperating witnesses and third parties, including cooperating law enforcement officials."  Massey, 3 F.3d at 624.  The circuit court explained that law enforcement officials have privacy interests in their own identities so that they can avoid being subjected to "embarrassment and harassment in the conduct of their official duties and personal affairs."  Id.  Third parties have an even stronger privacy interest, because revelation of their identities could suggest association or involvement in criminal activity or criminal investigation.  See Reporters Comm., 489 U.S. at 767.

These privacy interests are weighed against the countervailing interests in public disclosure of government agency conduct.  The public interest in learning the identities of law enforcement personnel is relatively small, particularly where the information provides little insight into the conduct and administration of criminal investigations.  See Halpern, 181 F.3d at 297.  Similarly, "there is little or no public interest in having the identities of

private parties revealed because that information sheds little or no light on the FBI's performance."  Id.

Consequently, this Court finds that the individuals' privacy interests outweigh the public's need for the withheld information.  As a result, the disclosure of the individuals' personal information would constitute a clearly unwarranted invasion of personal privacy (Exemption 6) or could reasonably be expected to constitute an unwarranted invasion of personal privacy (Exemption (7)(C)). Defendant's withholdings under Exemptions 6 and 7(C) are therefore proper.

### c.    Exemption 7(D)

Exemption 7(D) exempts from disclosure any records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution that furnished information on a confidential basis.  See 5 U.S.C. § 552(b)(7)(D).  In the case of records or information compiled by a criminal law enforcement agency in the course of a criminal investigation, the information provided by a confidential source may also be withheld.  Id.

But "the mere fact that a person or institution provides information to a law enforcement agency does not render that person a 'confidential source' within the meaning of Exemption 7(D)."  Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 34 (D.C. Cir. 1998) (citing U.S. Dep't of Justice v. Landano, 508 U.S. 165, 178, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993)).  Rather, the exemption applies only when "the particular source spoke with an understanding that the communication would remain confidential."  Landano, 508 U.S. at

178.  "Such understandings are reasonable when the law enforcement agency receiving information provides either an express or implied assurance of confidentiality." <u>Campbell</u>, 164 F.3d at 34.

The FBI has invoked Exemption 7(D) to withhold the name, identifying data, and information provided by a confidential source under an implied assurance of confidentiality. (Hardy Decl., ¶ 43.)  Along with the identity of the confidential source, the FBI withheld portions of interviews from which the confidential source could be identified.  (Hardy Decl., ¶ 44.) The confidential source's position and the sensitive nature of the information he or she provided supports an inference that he or she provided the information with the expectation of confidentiality.  (Hardy Decl., ¶ 44.) Information from anonymous sources also establishes that the confidential source expected his or her identity to remain confidential.  (Hardy Decl., ¶ 44.)  In the FBI's view, disclosure of the singular-in-nature information provided by the confidential source, which involved a potential threat to local security, would reveal the source's identity and defeat the FBI's interests in maintaining confidential sources.  (Hardy Decl., ¶ 44.)

Plaintiff challenges the FBI's withholding under Exemption 7(D) on the grounds that it failed to adequately detail the threat reported by the confidential source.  (Docket 23-2, p. 10.)

Because the records at issue were compiled by the FBI during the course of a criminal investigation, information relating to both the *identity* of the confidential source and any *information* provided by that source may be exempt from disclosure.  <u>See</u> 5 U.S.C. § 552(b)(7)(D).  "A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the

extent the Bureau thought necessary for law enforcement purposes." Landano, 508 U.S. at 174.  Disclosure is not required "if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."   Halpern, 181 F.3d at 298 (quoting Landano, 508 U.S. at 172)(quotations omitted).

The Government may establish implied confidentiality if it demonstrates that the nature of the crime investigated and the source's relation to it give rise to an inference that the source provided information with the expectation of confidentiality. See Landano, 508 U.S. at 179.  "An inference of confidentiality is typically found where the crime was of a serious or potentially violent nature and the source had a close relationship to the individuals being investigated." Garcia, 181 F.Supp. at 375.  For example, a finding of an implied confidentiality agreement may be appropriate where an informant would not provide information out of fear of retaliation but for the promise of confidentiality.  Id. at 179-80.

This Court finds that Defendant has sufficiently established an implied grant of confidentiality.  Implied grant of confidentiality can be found based on "the nature of the crime that was investigated and the source's relation to it." Landano, 508 U.S. at 180.  For example, a finding of implied confidentiality is appropriate with respect to sources who, absent confidentiality, might be worried about retaliation because of the subject matter. Id. at 179-80.

Here, the Vaughn index establishes that the confidential source was in a position to provide unique information concerning a potential threat to local security in connection with the Occupy Buffalo Movement and did so with the expectation that the information and

19

his or her identity would remain confidential.  (Hardy Decl., ¶ 44.)  The Occupy Movement

was highly publicized on a national and local level.  Given this publicity and the singular

nature of the information provided, it is reasonable to conclude that the confidential source

provided the information with an expectation of confidentiality.  This Court therefore finds

that Defendant has adequately demonstrated an implied assurance of confidentiality exists.

The confidential source in this case is precisely the type of individual who

reasonably would fear retaliation in the event of disclosure.  This is particularly true given

the highly publicized and politicized nature of the Occupy Movement.  Plaintiff's contention

that the FBI must provide more details about the potential threat ignores the fact that the

singular nature of the information provided would necessarily reveal the confidential

source's identity.  (Hardy Decl., ¶ 44.)

Accordingly, this Court finds that Defendant's withholding of information pursuant

to Exemption 7(D) is proper.

### d.    Exemption 7 (E)

Exemption 7 (E) protects from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement

records or information . . . would disclose techniques and procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 7 (E).

Once it is determined that the information at issue was compiled for law

enforcement purposes, as it has been here, see n. 11 *supra*, a court must determine

whether release of the records or information would disclose (1) techniques or procedures

20

for law enforcement investigations or prosecutions, or (2) guidelines for law enforcement investigations or prosecutions, if disclosure could reasonably be expected to risk circumvention of the law.

The FBI has asserted Exemption 7 (E) to protect procedures and techniques used by the FBI when it receives an anonymous tip.  (Hardy Decl., ¶ 46.)  According to Hardy, public knowledge of these techniques could enable individuals to circumvent them, thereby diminishing the value of anonymous tips.  (Hardy Decl., ¶ 46; Supp. Hardy Decl., ¶ 17.)

Plaintiff argues that the FBI's assertion of Exemption 7 (E) is improper because it has failed to establish that its anonymous tip techniques and procedures are not generally known to the public.  (Docket No. 23-2, p. 11.)  This argument, however, is grounded in Plaintiff's mistaken belief that the FBI carries this burden.  It does not.

Exemption 7 (E) is limited to techniques and procedures not generally known to the public.  See Doherty v. U.S. Dep't of Justice, 775 F.2d 49, 52 & n.4 (2d Cir. 1985).  But "[w]hile the government retains the burden of persuasion that information is not subject to disclosure under FOIA, a party who asserts that material is publicly available carries the burden of production on that issue."  Inner City Press, 463 F.3d at 245 (internal quotations and citations omitted; emphasis added).  Moreover, "it is well-established that 'an agency does not have to release all details concerning law enforcement techniques just because some aspects of them are known to the public.'"  Bishop v. U.S. Dep't of Homeland Sec., No. 13 Civ. 8620(GWG), 2014 WL 4627519, at *8 (S.D.N.Y. Sept. 16, 2014) (citing ACLU v. U.S. Dep't of Justice, No. 12 Civ. 7412(WHP), 2014 WL 956303, at *7 (S.D.N.Y. Mar. 11, 2014)).

Here, Plaintiff has produced no evidence that the FBI's anonymous-tip techniques

and procedures are publicly available.  Hardy, in contrast, fully explains the secret nature of the information being withheld.  (Supp. Hardy Decl., ¶ 17.)  In the absence of such a showing by Plaintiff, this Court finds that the FBI's withholding of this information pursuant to Exemption 7 (E) is proper.

## IV. CONCLUSION

Upon review of the <u>Vaughn</u> index and consideration of the parties' arguments, this Court finds that Defendant has performed an adequate search for records responsive to Plaintiff's request and has carried its burden of establishing that information withheld pursuant to Exemptions 6, 7 (C), 7 (D), and 7 (E) falls within those exemptions to the FOIA. Consequently, summary judgment in Defendant's favor is granted.  <u>See</u> <u>Carney</u>, 19 F.3d at 812.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

FURTHER, that Plaintiff's Cross Motion for Summary Judgment (Docket No. 23) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:        September 28, 2014
              Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
